UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| XPO LOGISTICS FREIGHT, INC. ) <br> f/k/a CON-WAY FREIGHT INC., ) <br> a Delaware corporation, ) <br> ) <br> Movant, ) <br> ) <br> v. ) <br> ) <br> YRC, INC., ) <br> ) <br> Respondent. ) | Case No. 16-mc-221-JWL-TJJ <br><br> Relating to an action pending in <br> the United States District Court for the <br> Eastern District of Arkansas <br> Case No. 4:16-cv-0129-BRW |

## MEMORANDUM AND ORDER

XPO Logistics Freight, Inc. ("XPO") has filed a motion to compel non-party YRC, Inc. ("YRC") to produce subpoenaed documents (the "Motion"), pursuant to Fed. R. Civ. P. 45(d). The subpoena duces tecum (the "Subpoena") was issued out of a civil case filed in the Eastern District of Arkansas (the "Arkansas case")[1] and required compliance in Kansas. YRC has filed a response and XPO has filed a reply to the Motion. The defendant in the Arkansas case, Cory Williams ("Williams"), has not taken a position in this case regarding the Subpoena.

The Motion has been extensively briefed by XPO and YRC. The Court has carefully reviewed all of the briefing on the Motion, the Subpoena, YRC's objections to the requested documents, and the complaint and answer filed in the Arkansas case.[2] The Court is ready to rule on the Motion.[3] For the reasons discussed below, the Motion is granted in part and denied in part.

---

[1] *XPO Logistics Freight, Inc. v. Williams*, Case No. 4:16-cv-0129-BRW (E.D. Ark.).

[2] The Court is also aware of three other motions to compel filed by XPO seeking compliance with subpoenas served upon YRC (similar to the instant Motion) in other cases currently pending before this Court. *See* D. Kan. Case Nos. 16-mc-220-JAR-TJJ, 16-mc-222-JWL-TJJ, and 16-mc-224-CM-TJJ.

[3] After reviewing the extensive briefing, the Court finds that oral argument would not materially assist in the disposition of the Motion and that an evidentiary hearing would not be helpful. *In re Cessna*

## I. FACTUAL BACKGROUND

XPO and YRC are both large LTL logistics[4] providers in the United States. They are competitors. Williams is a former employee of XPO, who is now employed by YRC.

XPO filed suit against Williams in the Arkansas case on March 8, 2016. Williams is the sole defendant in the case. The complaint alleges three counts against Williams: Violation of the Computer Fraud and Abuse Act; Misappropriation of trade secrets; and Breach of contract. Highly summarized, XPO alleges the following facts in its complaint:

Williams was employed by XPO's predecessor company at its Little Rock, Arkansas Service Center from June 2004 through December 2015. Williams was one of only two Account Executives at the Little Rock facility. He utilized certain software that provided him access to reports that would indicate XPO's top customers, profitability of accounts and shipping lanes, shipping costs, information to develop pricing strategies, and related information.

On June 10, 2011, Williams executed an Employee Nondisclosure Agreement in which he agreed that "during, or at any time after termination of [his] employment, [he would] not make any use whatsoever at any time of Proprietary Information except for purposes as described by" XPO. In November 2015, Williams attended an XPO National Sales Summit at which he was given access to additional confidential information regarding XPO and its affiliates, including its parent's "Cross-Selling Playbook." Before attending the Summit, XPO required Williams to sign an additional Nondisclosure Agreement and Consent.

---

*208 Series Aircraft Prod. Liab. Litig.*, No. 05-MD-1721-KHV, 2009 WL 6561225, at *1 n.1 (D. Kan. Nov. 4, 2009).

[4] One of the few things XPO and YRC agree upon is that LTL shipping involves freight shipments too large to be sent as parcels but too small to fill an entire trailer or truckload.

Just over a week after the Summit, Williams formally applied for a job with YRC. When confronted by his Director of Sales at XPO in early December, Williams denied any interest in working at YRC and stated he was "all in" on XPO's plan for him to take over the entire Little Rock sales territory. Thereafter, Williams worked in depth on two large XPO accounts, Virco and Lomanco. Williams terminated his employment with XPO on or about December 16, 2015.

In the Arkansas case, XPO served written discovery requests on Williams seeking information about his activities at YRC. Williams objected to at least four of those document requests, which XPO claims are key to its case and could implicate the use of its confidential information. In his response to XPO's requests for production 11, 12, and 16, Williams asserted several objections, including that the requests sought "confidential, financial, business, or proprietary information," but failed to indicate whether responsive documents were being withheld based upon those objections and apparently did not produce any documents in response to the requests.

On August 10, 2016, XPO served the Subpoena upon YRC requesting production of sixteen categories of documents. On August 29, 2016, YRC served its Objection to the Subpoena, and on September 28, 2016 XPO filed its motion to compel in this case. The following Subpoena document requests are in dispute:

1. All Documents that:

    (a) you directly or indirectly received from Williams prior to his start date with YRC; and

    (b) you directly or indirectly received from Williams at any time that mention or reference the XPO Subjects or the Removable Devices.

2. All Documents reflecting or relating to any communications between you and Williams on the subject of his possible employment or affiliation with YRC, including but not limited to: correspondence, job postings or advertisements; applications, resumes or CVs; business plans;

3

        employment contracts; job offers; and calendars, Outlook or similar invitations, agendas, minutes of meetings, credit card statements, expense reports and receipts reflecting travel or meetings on that subject.

3. The following Documents reflecting or relating to Williams' job title, functions, duties, responsibilities, remuneration, benefits and terms and conditions of employment since accepting employment with YRC: his personnel file; organizational charts showing his reporting and supervisory relationships; job descriptions; employment contracts; commission plans; employee handbooks or policies, procedures and restrictive covenants to which he is subject; his Outlook and other calendars, his expense reports; and quotes, proposals, RFPs and/or presentations on which he has worked.

4. All Documents reflecting or relating to any communications between you and Williams on the XPO Subjects.

5. All Documents relating to or reflecting the nature and extent of YRC's business with Virco, Inc. and Lomanco, Inc. since hiring Williams, including but not limited to communications, quotes, invoices, contracts and/or sales by customer or similar reports:

6. All Documents relating to or reflecting the nature and extent of YRC's business with the customers identified in Request No. 5 above in the twelve-month period prior to hiring Williams: including but not limited to communications, quotes, invoices, contracts and/or sales by customer or similar reports.

7. All Documents relating to or reflecting any actual or prospective changes Williams has suggested, recommended, or approved with respect to: your competitive strategies vis-à-vis XPO Freight; your LTL pricing for particular customers or particular shipping lanes; cost reduction strategies; the addition or subtraction of particular shipping lanes; and/or your target customers.

8. All Documents relating to or reflecting customer sales or marketing calls or efforts Williams has made on YRC's behalf since the date of your first contact with him regarding possible YRC employment, including but not limited to calendars, notes, quotes, proposals, RFPs or presentations.

9. All Documents relating to or reflecting to YRC's decision to hire Williams, including but not limited to internal memoranda, emails, minutes of meetings, notes of meetings and announcements.

10. Any internal announcements concerning your hiring of Williams.

4

11. All Documents relating to or reflecting any communications you have directly or indirectly with any other person or entity (e.g., customers, the public) regarding the hiring of Williams.

. . .

13. All Documents relating to or reflecting any communications between you and Williams on the subject of his XPO Freight employment, including but not limited to any actual or potential post-employment obligations thereto.

14. All Documents relating to or reflecting any comparative or other competitive LTL sales analysis conducted by or on YRC's behalf regarding XPO Freight since your first contact with Williams regarding potential YRC employment.

15. All communications which you sent to or received from (whether directly or by way of cc or bcc) Williams other than through his YRC email address.

16. Documents reflecting all cell phones and land lines Williams has used for YRC business.[5]

The Subpoena provides that the "time period of these requests shall be from July 1, 2015 to the present."[6]

## II. LAW APPLICABLE TO MOTIONS TO COMPEL COMPLIANCE WITH A SUBPOENA

Federal Rule of Civil Procedure 45(d)(1) requires a party or attorney issuing and serving a subpoena to "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." When as in this case the subpoenaed party (YRC) serves written objections to the subpoena, then the party serving the subpoena (XPO) may file a motion to

---

[5] Subpoena (ECF No. 1-5) at 8–9. Request No. 12 is not at issue, as it seeks documents relating to "Removable Devices," but no removable devices were identified for Williams. *See* XPO Am. Reply (ECF No. 12) at 16 n.3.

[6] Subpoena (ECF No. 1-5) at 7.

compel the production or inspection sought by the subpoena.[7] The court may issue an order requiring such acts, but the order must protect a non-party from "significant expense resulting from compliance."[8] Non-parties responding to Rule 45 subpoenas are generally given heightened protection from discovery abuses.[9]

It is well established that the scope of discovery under a subpoena is the same as the scope of discovery under Rule 26(b) and Rule 34.[10] Pursuant to Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Relevance is broadly construed during the discovery stage."[11] Discovery requests should be considered relevant if there is "any possibility" that the information sought may be relevant to the claims or defenses of any party.[12]

The party requesting discovery bears the minimal burden of showing the request to be relevant on its face, and then the burden shifts to the party resisting discovery.[13] The resisting

---

[7] Fed. R. Civ. P. 45(d)(2)(B)(i).

[8] Fed. R. Civ. P. 45(d)(2)(B)(ii).

[9] *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008).

[10] *Tank Connection, LLC v. Haight*, No. 13-CV-1392-JTM-TJJ, 2015 WL 3571424, at *3 (D. Kan. June 5, 2015); *Ficep Corp. v. Haas Metal Eng'g, Inc.*, No. 14-243-CM, 2015 WL 566988, at *2 (D. Kan. Feb. 11, 2015); *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003) (citing Fed. R. Civ. P. 45(d)(1) advisory committee's note to 1970 amendment and 9A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2459 (2d ed. 1995)).

[11] *Cady v. R & B Servs.–Wichita, LLC*, No. 13-1331-KHV, 2014 WL 1309089, at *1 (D. Kan. Apr. 1, 2014).

[12] *Tomelleri v. Zazzle, Inc.*, No. 13-CV-02576-EFM-TJJ, 2014 WL 7071573, at *2 (D. Kan. Dec. 12, 2014).

[13] *Cady*, 2014 WL 1309089, at *2.

party cannot simply stand on a conclusory statement that the requested discovery is irrelevant, but instead must either demonstrate that the requested discovery does not come within the broad scope of relevance defined in Rule 26(b)(1), or that it is of such marginal relevance that the potential harm caused by the discovery would outweigh the presumption in favor of broad disclosure.[14]

### III.   YRC'S GENERAL OBJECTIONS

#### A.   Harassment, Undue Annoyance, Embarrassment, Oppression, or Expense

YRC asserts a general objection to each request for production in the Subpoena that the request is "designed to harass YRC or to impose undue annoyance, embarrassment, oppression, or expense upon YRC." Other than this conclusory statement, YRC includes no explanation or support for this assertion in its objection to the Subpoena. In its Brief, YRC argues that XPO's complaint against Williams is purely speculative and accuses XPO of conducting a nationwide litigation campaign to inhibit competition and for the purpose of obtaining YRC's highly confidential business information.[15]

The Court disagrees with YRC that the claims XPO asserts against Williams are purely speculative. The complaint asserts a number of specific and detailed allegations against Williams. XPO is not required to prove a prima facie case in order to justify a request for discovery.[16] Nor must XPO state a claim against subpoenaed non-party YRC in order to be

---

[14] *Speed Trac*, 2008 WL 2309011, at *3.

[15] YRC's Brief in Resp. to Pl.'s Mot. to Compel (ECF No. 5) at 1, 11–15.

[16] *Speed Trac*, 2008 WL 2309011, at *3. The Court has also reviewed the portions of John Prescott Burton's deposition testimony cited by XPO and YRC relative to YRC's speculative claims argument and does not find the Burton testimony persuasive with regard to that argument.

entitled to seek appropriate, relevant, and proportional discovery from YRC related to the claims *against Williams*.

Additionally, the Court finds unpersuasive YRC's argument that XPO's filing of lawsuits against its former employees in multiple jurisdictions and serving subpoenas requesting documents from YRC in each of those cases constitutes harassment. To the extent XPO sought to assert claims against its former employees, the filing of multiple lawsuits in different jurisdictions was necessitated by the residences of XPO's former employees in different states. Finally, although YRC argues repeatedly that XPO's claims in the Arkansas case are futile because Williams did not sign a non-compete agreement, YRC does not dispute XPO's allegation that Williams signed two nondisclosure agreements.

With respect to YRC's argument that some of the subpoenaed documents could be obtained from Williams, the Court finds this argument unpersuasive. XPO previously served written discovery requests upon Williams, but was unable to obtain the requested discovery due to Williams' objections and apparent refusal to produce responsive documents.

YRC's general objection to XPO's Subpoena document requests that they are harassing, or unduly annoying, embarrassing, oppressing, or expensive is therefore overruled.

### IV. YRC'S SPECIFIC OBJECTIONS

#### A. Requests 1(b) and 4

Subpoena Request 1(b) asks YRC to produce all documents that it "directly or indirectly received from Williams at any time that mention or reference the XPO Subjects or the Removable Devices." Request 4 asks for "[a]ll documents reflecting or relating to any communications between [YRC] and Williams on the XPO Subjects." YRC asserted a general

objection to XPO's definition of "XPO Subjects."[17]  That term, however, is only used in Subpoena Requests 1(b) and 4. The Subpoena defines "XPO Subjects" as:

> XPO Freight's business, services, processes, methods, operations, network, carriers, facilities, customers, costs, prices, pricing programs and margins, strategies and plans, sales or performance metrics, data or information, employees, contractors, consultants or officers, including but not limited to: the reports and information identified in paragraphs 9-14 and 16-17 of the Complaint; its gross revenues, net revenues and/or operating ratios (the costs of the services rendered to the customer divided by the revenue obtained from the customer) by XPO customer or by shipping lane; pricing; and/or the Sales Plan Dashboard referenced in the Complaint.[18]

YRC argues that this definition makes Requests 1(b) and 4 overly broad, unduly burdensome, disproportionate to the needs of XPO's case against Williams, and seeks confidential and proprietary business information and trade secrets. Moreover, YRC argues this broad "XPO Subjects" definition would require YRC to disclose its competitive analyses regarding its direct competitor, XPO, without regard to whether YRC's analyses were informed or influenced by Williams or XPO's purported trade secrets.

The Court overrules YRC's objection to the "XPO Subjects" definition for both Requests 1(b) and 4. Although the definition includes a wide range of subjects, Requests 1(b) and 4 themselves are limited to YRC documents received *from Williams* and communications *from Williams* on the subjects pertaining to his former employer XPO. Accordingly, YRC's general objection to the "XPO Subjects" definition is overruled.

With respect to the remaining objections, both Requests 1(b) and 4 seek documents relevant on their face to XPO's misappropriation of trade secrets and breach of contract claims

---

[17] Although XPO asserts this as a "general objection," the Court will treat it as a specific objection because it only applies to Requests 1(b) and 4.

[18] Subpoena (ECF No. 1-5) .

against Williams. Moreover, YRC has not met its burden of demonstrating lack of relevance of the requested documents sought by these Requests. Nor has YRC demonstrated that the requested documents—all of which either relate to documents received or communications *from Williams* mentioning XPO Subjects—constitute YRC's confidential and proprietary information or trade secrets entitled to protection.

Finally, the Court does not find that requiring YRC to respond to Requests 1(b) and 4 will subject it to an undue burden. While the Court must quash or modify a subpoena that subjects a subpoenaed party to an "undue burden,"[19] the Court recognizes that compliance with a subpoena will inevitably involve some measure of burden to the subpoenaed non-party.[20] The Court therefore will not deny a party access to relevant discovery merely because compliance inconveniences a nonparty or subjects it to some expense.[21] The subpoenaed entity seeking to quash or modify the subpoena has the burden to show undue burden.[22] YRC has "provided only conclusory allegations and has not offered any detailed explanation, affidavit, or other evidence demonstrating that it will suffer undue burden and expense complying with the subpoena."[23] Requests 1(b) and 4 are sufficiently limited by subject matter and time frame so that they do not appear to place an undue burden upon YRC. The Court therefore overrules YRC's undue burden objections.

YRC will be required to produce documents responsive to Requests 1(b) and 4.

---

[19] Fed. R. Civ. P. 45(d)(3)(A)(iv).

[20] *Ficep*, 2015 WL 566988, at *3.

[21] *Id.*

[22] *Id.*

[23] *Speed Trac*, 2008 WL 2309011, at *4.

10

### B.     Requests 2, 9, 10, and 13

Requests 2 and 9, respectively, ask YRC to produce documents relating to communications between YRC and Williams regarding his possible employment with YRC, and documents relating to YRC's decision to hire Williams. Request 10 seeks internal announcements concerning YRC's hiring of Williams. Request 13 seeks communications between YRC and Williams on the subject of his XPO employment.  YRC asserted relevancy, overly broad and unduly burdensome objections to these Requests. It also objected to the Requests to the extent they require disclosure of YRC's confidential business or proprietary information.

These Requests are relevant on their face to XPO's trade secret misappropriation and breach of contract claims against Williams in that they seek YRC documents to or from Williams regarding the XPO Subjects and documents regarding Williams' application for employment or hiring by YRC. Documents indicating what information, if any, Williams provided to YRC regarding XPO or the XPO Subjects and documents regarding the similarities, if any, between Williams' work at XPO and the job for which he was hired at YRC are relevant to the issues in the Arkansas case. Moreover, YRC has not met its burden of demonstrating lack of relevance of the requested documents. Nor has YRC demonstrated that the requested documents—all of which either relate to communications between YRC and Williams regarding Williams' possible employment with YRC and/or prior employment with XPO, or YRC's hiring decision and internal announcements—constitute YRC's confidential and proprietary information or trade secrets entitled to protection. Finally, as with the previously discussed requests, YRC has failed to meet its burden of showing that responding to these requests would subject it to a undue

11

burden. The Requests are sufficiently limited by timeframe and scope so that they do not appear to place an undue burden upon YRC.

The Court therefore overrules YRC's objections, and YRC will be required to produce documents responsive to Requests 2, 9, 10, and 13.

### C. Requests 1(a), 3, 11, 15, and 16

Request 1(a) asks YRC to produce all documents that it directly or indirectly received from Williams prior to his start date with YRC. Request 3 seeks several categories of YRC documents relating to Williams' job duties and employment. Request 11 seeks production of communications YRC had directly or indirectly with "any other person or entity" regarding the hiring of Williams. Request 15 requests all communications YRC sent to or received from Williams other than via his YRC email address. Request 16 seeks cell phone and land lines used by Williams for YRC business.

These requests are overly broad in that they seek certain documents not relevant to XPO's claims or any defense asserted by Williams in the underlying case and, to the extent they do seek documents relevant to the claims or defenses at issue, the requests are unreasonably duplicative of other requests to which YRC will be ordered to respond.[24] YRC's overly broad and relevancy objections are therefore sustained, and YRC will not be required to produce documents in response to the Requests 1(a), 3, 11, 15, and 16.

---

[24] E.g., Request 1(a), to the extent it requests relevant documents, is duplicitous of Request 1(b); Request 3, to the extent it requests relevant documents, is duplicitous of Request 2.

### D.      Requests 5, 6, 7, 8, and 14

Requests 5 and 6 seek documents regarding the nature and extent of YRC's business with two of XPO's alleged customers, Virco, Inc. and Lomanco, Inc., since YRC hired Williams and during the year prior to his hiring (including communications, quotes, invoices, contracts and/or sales by customer or similar reports). Request 7 asks YRC to produce documents relating to changes Williams has suggested, recommended, or approved regarding YRC's competitive strategies vis-à-vis XPO, YRC's LTL pricing for particular customers or shipping lanes; cost reduction strategies, the addition or subtraction of particular shipping lanes, and/or YRC's target customers. Request 8 seeks customer sales or marketing calls or efforts Williams has made for YRC since the date of YRC's first contact with Williams regarding possible YRC employment (including calendars, notes, quotes, proposals, RFPs or presentations).  Request 14 seeks comparative or other competitive LTL sales analysis conducted by or on YRC's behalf regarding XPO since YRC's first contact with Williams regarding potential YRC employment.

YRC objects to these Requests on grounds they would require production of its "confidential and proprietary technical, business, and financial information, and trade secrets," including YRC's competitive strategies regarding customers and/or potential customers.

Fed. R. Civ. P. 45(d)(3)(B)(i) provides, in pertinent part, that the court for the district where compliance with the subpoena is required may, on motion, quash or modify the subpoena if it requires "disclosing a trade secret or other confidential research, development, or commercial information." However, "[t]here is no absolute privilege for trade secrets and similar confidential information."[25]

---

[25] *Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979).

The party resisting discovery must first show that the information sought is a trade secret or confidential information and then demonstrate that its disclosure might be harmful.[26] If these requirements are met, then the burden shifts to the party seeking the discovery to show that disclosure of the trade secrets or confidential information is relevant and necessary to the action.[27] The court must also balance the need for the trade secrets against the claim of injury resulting from disclosure.[28]

These requests seek information regarding YRC's business with its customers including, for example, its quotes, invoices, contracts, sales, proposals, RFP's, and cost reduction strategies. This is confidential and proprietary business information of YRC, and its disclosure could be harmful to YRC. XPO does not contend otherwise. The burden therefore shifts to XPO to establish that disclosure of this confidential information is relevant and necessary to the underlying action.

With one exception, these requests seek YRC's confidential or proprietary information irrespective of any link to or connection with XPO's claims against Williams. To this point, XPO has not asserted any claims against YRC in the Arkansas case. In other requests with respect to which the Court will require YRC to respond, XPO specifically requests documents regarding or reflecting communications to or from Williams concerning XPO or the XPO Subjects. Those requests encompass the documents responsive to Requests 5, 6, 8, and 14 to the extent they reference or relate to XPO's customers. However, the Court finds that XPO has not met its burden to show the broader requests at issue here—which seek disclosure of YRC's confidential

---

[26] *Centurion Indus., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981). *See also Speed Trac*, 2008 WL 2309011, at *4.

[27] *Speed Trac*, 2008 WL 2309011, at *4.

[28] *Id.*

and proprietary information without any link to or connection with XPO's claims against Williams—are relevant and necessary to the claims asserted in the Arkansas case. The one exception to this is Request 7, which seeks "all documents relating to or reflecting any actual or prospective changes Williams has suggested, recommended, or approved with respect to [YRC's] competitive strategies vis-à-vis XPO." Moreover, the Court finds XPO's need for any such documents outweighs the potential injury to YRC from disclosure.

Accordingly, YRC's objections to these Requests on grounds that they would require production of its confidential and proprietary technical, business, and financial information are sustained, and it will not be required to produce documents in response to Requests 5, 6, 8, and 14. The Court, however, overrules YRC's confidential and proprietary objection to Request 7. The Court further overrules YRC's relevance and overly broad and undue burden objections to Request 7, and YRC will be required to produce all documents responsive to that Request.

**IT IS THEREFORE ORDERED THAT** Movant XPO's motion to compel Respondent YRC to produce subpoenaed documents (ECF No. 1) is granted in part and denied in part. The motion to compel is granted with respect to XPO's Subpoena Requests 1(b), 2, 4, 7, 9, 10, and 13 and YRC is ordered to produce documents responsive to these Requests **within twenty-one (21) days of the date of this Order**. The motion to compel is denied with respect to XPO's Subpoena Requests 1(a), 3, 5, 6, 8, 11, 14, 15, and 16.

IT IS SO ORDERED.

Dated November 15, 2016 in Kansas City, Kansas.

Teresa J. James
U. S. Magistrate Judge